Patricia M. FLICK, Plaintiff,

v.

BANK OF AMERICA, Defendant.

No. CV–S–99–1672–RLH(LRL).

United States District Court,
D. Nevada.

April 17, 2002.

Larry C. Johns, Dennis Leavitt, Glenn Schepps, Leavitt Law Firm, Las Vegas, NV, for Plaintiff.

Charles L. Chester, Michael D. Moberly, Ryley, Carlock & Applewhite, Phoenix, AZ, Richard Pocker, Dickerson, Dickerson, Consul & Pocker, Las Vegas, NV, for Defendant.

### ORDER

HUNT, District Judge.

Before the Court is Defendant's Motion to Enforce Settlement Agreement (# 100, filed March 13, 2002). Plaintiff's new counsel filed an Opposition (# 104) on March 25, 2002. Affidavits (## 102, 108) were filed by Plaintiff's former counsel, Larry Johns, which included affidavits of two persons, Pat Kiser and Thomas Powers, known to Plaintiff, who swore to conversations with Plaintiff about the settlement. A hearing on the motion was conducted on March 27–28, 2002, at which Plaintiff Patricia M. Flick, her former attorney Larry Johns, and Defendant's attorneys, Charles Chester and Richard Pocker testified.

■ Plaintiff's new counsel, Glenn Schepps and Dennis Leavitt, objected to consideration of the Kiser and Powers affidavits, but declined the Court's offer to continue the hearing so counsel could cross-examine them on their affidavits. Furthermore, Plaintiff was permitted to refute their statements in the affidavits and Mr. Johns was questioned about the circumstances surrounding the obtaining of the Kiser and Powers affidavits. The Court finds their admissibility for the purposes of the hearing to conform to the requirements of Federal Rules of Evidence 807 (formerly 803(24) and 804(b)(5)), in that there exists "equivalent circumstan-

tial guarantees of trustworthiness." In doing so, the Court notes that Mr. Johns, who proffered the affidavits, was a witness to the proceedings, but was no longer counsel of record with authority to subpoena Kiser [1] or Powers.

■ Having heard and considered the testimony and documents presented (including those submitted by affidavits of various witnesses) the Court finds that Plaintiff did in fact agree to settle the case, but the Court is precluded from enforcing the settlement for reasons described below.

Specifically, the Court makes the following findings:

1. Plaintiff lacks credibility in almost every aspect of her testimony.

2. The offered settlement, though previously rejected, became palatable after this Court's adverse rulings on motions in limine and Plaintiff, after soliciting and receiving advice from her attorney, decided not to pursue her "crusade" and to settle the case, the only remaining concern being how the funds should be distributed to reduce the tax liabilities. Her handwritten memorandum to Larry Johns, dated February 20, 2002, confirms the foregoing.

3. Plaintiff advised her counsel, by telephone, on February 7, 2002, that she agreed to settle the case, authorized him to settle the case for the amount offered, and, confirmed that agreement in telephone conversations with Thomas Powers and Pat Kiser. On the basis of Plaintiff's assurance to Mr. Johns that she agreed to settle, Mr. Johns called the Court to advise that the trial, which was scheduled to proceed the following

---

1. Mr. Johns also advised the Court that Ms. Kiser, whom he had never met, but was a friend of Plaintiff's, had informed him by telephone that she was ill. Mr. Powers is a mutual friend and is the person who referred the Plaintiff to Mr. Johns in the first instance.

week, was off and the matter had been settled.

4. Plaintiff effectively gave her attorney authority to settle the case for a total of $500,000, with $350,000 to be distributed to her and $150,000 to be distributed to Larry Johns as and for attorneys fees and costs.

5. Although Plaintiff had already paid her attorney, Larry Johns, approximately $95,000, she knew that all amounts she had paid would be deducted from the amount designated to go to Mr. Johns, but that by designating a portion of the money to Mr. Johns, she would be more likely to reduce her potential tax liability.

6. On February 19, 2002, she received a copy of the written settlement agreement prepared by counsel for Defendant. On February 20, 2002, she advised Mr. Johns by memorandum that she was working with her financial advisors regarding the "agreement structure and disbursement" and that she was hopeful of reaching Mr. Johns by the next day so he could answer any questions she and her financial advisors might have (apparently regarding the disbursement issues).

7. Between February 20 and approximately February 23 or 24, 2002, Plaintiff either changed her mind or was convinced by someone not to agree to the settlement and she asked her present counsel to take the case because she had a dispute with Mr. Johns, misrepresenting to them that the trial date had only been delayed because the parties had been in settlement discussions. Their motion to substitute as counsel followed (# 97, filed March 1, 2002). Mr. Johns spoke with attorney Glenn Schepps on February 27, 2002, apparently after receiving a letter from Schepps about Schepps' involvement.

8. Giving her new counsel the benefit of the doubt, that they did not intentionally mislead the Court when inaccurate representations were made to the Court about the status of the case, the Court can only conclude that Plaintiff made misrepresentations to them about the status of the proceedings. Furthermore, in her affidavit in support of the motion for substitution of counsel, Plaintiff notably fails to deny that she agreed to settle the case, and even fails to make any reference to settlement discussions or their role in her dispute with Mr. Johns. The foregoing are further bases for the Court's finding of her lack of credibility and candor.

9. Larry Johns was given authority to settle the case and acted reasonably thereunder. Counsel for Defendant reasonably acted under the impression that Larry Johns had such authority and proceeded on that impression.

But for the existence of the Plaintiff's federal age discrimination claim and the related Older Workers Benefit Protection Act ("OWBPA") (specifically 29 U.S.C. § 626(f)(1)(A)), this Court would grant the motion to enforce the settlement.

 "The interpretation and validity of a release of claims under Title VII is governed by federal law." *Stroman v. West Coast Grocery Company*, 884 F.2d 458, 461 (9th Cir.1989). "A settlement agreement may be binding, in some circumstances, even if it is an oral one." *Harrop v. Western Airlines, Inc.*, 550 F.2d 1143, 1145 (9th Cir.1977). The foregoing applies specifically to Title VII cases, where public policy favors voluntary settlement. *Stroman*, 884 F.2d at 460–461; *Fulgence v. J. Ray McDermott & Co.*, 662 F.2d 1207, 1209 (5th Cir.1981) (settlement agreement in Title VII cases need not be reduced to writing).

*Waits v. Weller*, 653 F.2d 1288 (9th Cir. 1981), argued by the Defendant, is supportive of the foregoing, and would be

persuasive if this case did not also include an age discrimination claim. On its facts, however, it is distinguished from this case in that *Waits* dealt with whether a settlement agreement could be a defense in the action, if the settlement agreement was declared to be valid. The matter was actually remanded for the district court to determine whether the parties reached a binding settlement.

Without the age discrimination claim, the Court would find no difficulty in enforcing the settlement agreement. Unfortunately, age discrimination claims, and persons who qualify under the Older Workers Benefit Protection Act, carve out an exception to the above rule. In those cases where settlement agreements, in age discrimination claims, were upheld, it invariably involved a written statement signed by the plaintiff (*e.g., Petersen v. Pacific Gas and Electric Company,* (unpublished) 5 Fed.Appx. 676, 2001 WL 210621 (9th Cir.(Cal.) 2001)), or where the plaintiff agreed in open court to a specific agreement read in open court (*e.g., Manning v. New York University,* 2001 WL 963982 (S.D.N.Y.2001)).

Plaintiff's claims included a federal age discrimination claim. The settlement negotiations and the proposed and ultimate written General Release and Settlement Agreement anticipated a settlement, release, and waiver of all claims. There was no evidence of any apportionment of the settlement figure among the various claims by Plaintiff. Therein lies the rub. The Older Workers Benefits Protection Act provides certain safeguards against older workers precipitously waiving their rights under federal age discrimination laws.

Title 29 U.S.C. § 626(f), of the Older Workers Benefits Protection Act, provides that certain conditions exist, as a minimum, to find that a waiver of claims is knowing and voluntary. "An employee 'may not waive' an ADEA claim unless the waiver or release satisfies the OWBPA's requirements. The policy of the OWBPA is likewise clear from its title: It is designed to protect the rights and benefits of older workers." *Oubre v. Entergy Operations, Inc.,* 522 U.S. 422, 426–427, 118 S.Ct. 838, 139 L.Ed.2d 849 (1998).

"Congress imposed specific duties on employers who seek releases of certain claims created by statute." *Oubre,* 522 U.S. at 427, 118 S.Ct. 838. An employee cannot waive an age discrimination claim unless the employer complies with the requirements of the statute and the Court may not easily presume to ratify something which Congress forbids. *Id.* The statute "imposes affirmative duties of disclosure and waiting periods." *Id.* At issue here are the waiting periods. The other requirements seem to have been met.

Section 626(f)(1)'s requirement that the agreement be written, and that it be written in a manner calculated to be understood by the Plaintiff has been met here, at least to the extent that an agreement meeting the requirements was prepared. It was not, however, signed by Plaintiff.

The Section's requirement that the written waiver refer to claims under the age discrimination statute is also met in the written document. Also, there is no attempt to waive rights which may arise after the date of execution. The requirement that Plaintiff be advised to consult with an attorney is clearly met here because Plaintiff already had an attorney with whom she consulted at length.

Section 626(f)(1)(F)(i) requires that Plaintiff be given a period of at least 21 days within which to consider the agreement. Put another way, Plaintiff had 21 days in which to change her mind if she had not signed the written agreement. The evidence demonstrates that Plaintiff changed her mind within that period. She agreed to settle for the amount offered

($500,000, divided $350,000 to her and $150,000 to her attorney) on February 7, 2002. She did not receive the written settlement agreement until February 19, 2002. She obviously changed her mind no later than February 23 or 24, 2002, when she contacted different counsel and asked them to substitute in as her attorney on the ground that she had disagreements with her former attorney, and to ask for a new trial date. Whether one calculates from February 7, or February 19, Plaintiff's change of mind was within the time permitted by the OWBPA.

Even had she signed the agreement, Section 626(f)(1)(G) provides a 7–day period during which Plaintiff could have revoked her agreement.

Thus, while Plaintiff did agree to a settlement of all her claims, this Court cannot enforce the agreement as to her age discrimination claim. Because it is clear that both parties intended to the settlement to be a total settlement of all claims, and no allocation of settlement proceeds was made among the various claims, the Court cannot enforce the settlement as to part of the claims and leave the age discrimination claims pending. Both the statute and *Oubre v. Entergy Operations, Inc.,* preclude this Court from enforcing the settlement agreement as to the age discrimination claims. The obvious intent of the parties precludes the Court from enforcing only part of the settlement agreement.

IT IS THEREFORE ORDERED that Defendant's Motion to Enforce Settlement Agreement (# 100) is DENIED.